Hillsborough, }
June 25, 1920. }

## New York, New Haven, & Hartford Railroad Co. *v*. Charles Tonella.

In the absence of knowledge or notice to a carrier of freight that the title thereto will pass to the consignee upon shipment, the clause in a bill of lading "the owner or consignee shall pay the freight" means that the consignor will pay the freight if the consignee fails to pay.

If in such case the carrier has filed a schedule of rates in compliance with the federal statute, a mistake whereby less than the legal rate was received from the consignee is no defence to an action against the consignor for the undercharge; nor is the carrier estopped in such action by reason of the bankruptcy of the consignee and the consequent loss to the consignor of his right to reimbursement.

Action, to recover freight charges. Facts agreed. Case transferred from the September term, 1919, of the superior court by *Marble*, J., without a ruling. In August, 1912, one Hutchings purchased of the defendant seventeen pieces of granite in Milford, N. H., which was sold f. o. b. cars. Of this arrangement the plaintiff had no knowledge. The granite was shipped by the defendant under a bill of lading from Milford, N. H., to Hutchings at Milford, Mass. The defendant appears therein as owner and consignor and Hutchings as consignee. By mistake the weight of the granite upon which the freight was reckoned was less than the true weight. Hutchings paid the freight upon this basis, which was in fact thirteen dollars less than the freight reckoned upon the true weight of the granite. The mistake was discovered some eleven months after the shipment and

after Hutchings went into bankruptcy. Upon discovering the mistake the plaintiff demanded payment of the undercharge from Hutchings, which he refused. It thereupon demanded payment of the defendant which he refused. The bill of lading provided that: "The owner or consignee shall pay the freight and all other lawful charges accruing on said property."

If upon these facts the defendant is liable, judgment shall be rendered for the plaintiff for $13, otherwise for the defendant.

*Charles J. Hamblett* and *Marshall D. Cobleigh*, for the plaintiff.

*Kittredge & Prescott, John R. McLane* and *Ralph W. Davis*, for the defendant.

WALKER, J. The question presented relates to the construction of the bill of lading under which the property was received by the plaintiff and shipped from Milford in this state to Milford in Massachusetts. Was the defendant, the shipper, liable for the balance due on account of the freight? It is important to bear in mind that the railroad had no knowledge and is not chargeable with notice that the sale of the granite as between the parties to it was completed in this state when it was loaded on the cars and billed to Hutchings as consignee. It is also important that in the bill the defendant was represented as the owner of the property and the consignor. The inference from these facts, in the absence of evidence to the contrary, is that the plaintiff understood that the defendant was the owner of the property which he desired to be delivered to the consignee. There is nothing to indicate that it was informed the defendant was acting as the agent of Hutchings or that the latter was the owner of the property. The expression therefore in the contract that "The owner or consignee shall pay the freight" meant that the defendant would pay for the transportation if Hutchings failed to pay it. It was inserted merely for the convenience of the carrier and not as releasing the defendant in any sense from liability for the freight to the plaintiff. *Holt* v. *Westcott*, 43 Me. 445; *Coal &c. Ry.* v. *Company*, 77 W. Va. 309; *Union Freight R. R.* v. *Winkley*, 159 Mass. 133; 2 Hutch. Carriers, *s.* 810. In *Wooster* v. *Tare*, 8 Allen, 270, 271 it is said: "The shipper or consignor, whether the owner of the goods shipped or not, is the party with whom the owner or master enters into the contract of affreightment. It is he that makes the bailment of the goods to be carried, and, as the bailor, he is liable for the compensation to be paid

therefor." This is undoubtedly the general rule in the absence of evidence of a different intention. For other cases on this point see note in L. R. A. 1917A, 665.

As presumptively the plaintiff had complied with the federal statute with reference to the filing of rates for the transportation of property over its lines, a mistake in exacting the legal rate from the defendant did not relieve the latter from the duty of paying or reimbursing the former for the undercharge. *Baltimore &c. R. R.* v. *Company*, 48 Ind. App. 647. The compensation for the carriage is established by the statute and not by the contract of the parties. An innocent mistake in this respect, if uncorrected, is as much an evasion of the statute as a wilful omission, and furnishes no foundation for the claim that the shipper having once paid or caused to be paid the amount demanded can defend against the payment of a further sum previously omitted by mistake. In such a case the carrier is not estopped to insist upon the payment of the undercharge, although the shipper on account of the bankruptcy of the consignee, or for other reasons, will suffer a loss under his contract with the consignee. *Texas &c. Ry.* v. *Company*, 204 U. S. 426, 445; *Boston & Maine R. R.* v. *Company* (Mass.), 122 N. E. Rep. 313; *Central R. R.* v. *Mauser*, 241 Pa. St. 603. See also 49 L. R. A. (N. S.) 92, *Note*.

Nor does it appear that the plaintiff after discovering the error in the freight charged in the first instance unreasonably delayed notifying the defendant of the fact. In fact it appears it acted expeditiously. It performed its full duty under the circumstances in seeking to recover of the defendant not only what was due for the service performed but what it was required by the statute to collect. Neither the fact that the consignee paid the freight demanded upon the delivery of the goods to him, nor the fact that his acceptance of them was notice to the carrier that he was the owner of them, operates as a discharge of the consignor of further liability for the undercharge. *Baltimore &c. R. R.* v. *Company*, *supra*. The consignor assumes full liability for the freight. If he does not discharge this liability in the first instance but leaves it to be discharged by the consignee, the failure of the latter to do so in full or in part does not relieve him of that liability as between him and the carrier. His liability continues for the part of the freight left unpaid by the consignee, as it would for the entire freight bill left unpaid by the latter. *Coal &c. Ry.* v. *Company*, *supra*. The consignee's payment of a portion of the freight due is not equivalent to his exclusive assumption of the duty to pay the remainder.

If the decision in *Yazoo &c. R. R.* v. *Zemurray*, 238 Fed. Rep. 789, cited by the defendant, is opposed to this result, it is contrary to the principles of most of the authorities, and cannot be followed. As stated in *Central R.R.* v. *MacCartney*, 68 N. J. Law, 165, 172, the "acceptance by the consignee, although accompanied by an undertaking to pay the charges, does not discharge the consignor from liability to the carrier. The two contracts are held to be independent and not inconsistent one with the other." In *Western Ry.* v. *Collins* (Ala.) 78 So. Rep. 833, also cited by the defendant, it is somewhat doubtful what the actual holding was. While fully recognizing the principles generally applicable in such cases, the opinion seems to be based on what is deemed to be "fair dealing." The facts however are so divergent from the facts in the case at bar, that the decision is not of controlling force as an authority. Nor is the memorandum opinion in *Heed* v. *Dorris* (Ga.), 100 S. E. Rep. 717 in point.

The mistake in the weight of the stone upon which the freight was based has the same effect as a mistake in rates. The shipper did not pay what he ought to have paid for the service, and is therefore liable therefor.. *Pennsylvania R. R.* v. *Mogi*, 128 N. Y. Supp. 643.

*Judgment for the plaintiff for $13.*

YOUNG, J., dissented: the others concurred.