FREIGHT OPERATIONS, INC., PLAINTIFF-APPELLANT, v. THE HUNTERDON COUNTY DEMOCRAT, INC., DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted May 10, 1982—Decided May 21, 1982.

Before Judges ALLCORN, FRANCIS and MORTON I. GREENBERG.

*James B. Brown, Jr.* for appellant.

*Wharton, Stewart & Davis* for respondent (*Timothy Boderck* on the brief).

The opinion of the court was delivered by

## MORTON I. GREENBERG, J. A. D.

This matter comes on before this court on an appeal from a judgment entered October 1, 1981 dismissing plaintiff's action. The judgment reflected a determination set forth by the trial judge in a letter opinion dated September 17, 1981.

The facts necessary to recite for disposition of this appeal are neither complicated nor in dispute. Indeed, the case was adjudicated in the trial court largely on the basis of a stipulation of facts. Plaintiff is a freight carrier. Defendant is in the printing business. Defendant printed certain items for a company from Illinois, Rand Advertising. Plaintiff made five distributions of the items printed by defendant. Payment for two distributions is in dispute. In these two instances plaintiff picked up the printed items from defendant's New Jersey premises and delivered them to various places in other states. Plaintiff did not prepare bills of lading with respect to the distribution. Defendant did prepare documents in connection with the shipments. Plaintiff contended in the trial court that the documents were bills of lading. Defendant denied this. At no time did defendant execute a formal statement as provided in § 7 of the uniform bill of lading prepared by the Interstate Commerce Commission that the printed items should not be delivered to the consignee without payment of freight charges. Defendant did not orally or in writing agree to pay plaintiff for the freight charges. The amount of the charges is $4,010. Rand has paid no portion of this amount.

The trial judge in his written opinion indicated that the sole question before him was whether defendant had obligated itself to pay the claimed freight charges. The judge then ruled as follows:

In reviewing the applicable federal law governing common carriers and cited New Jersey decisions I am satisfied that plaintiff is required to issue an appropriate Bill of Lading. While language employed in forms issued by defendant are argued to fulfill that requirement the court is not satisfied those forms constitute a bill of lading required to impose liability on defendant. Accordingly the court enters judgment in favor of defendant. Prevailing counsel will submit an appropriate form of judgment under the five day rule.

Initially we note that plaintiff contends that this action is to be decided under federal law. Defendant does not deny this contention and we agree with it. *See Checker Van Lines v. Siltek International, Ltd.,* 169 *N.J.Super.* 102, 105 (App.Div. 1979). We further observe that plaintiff seems no longer to contend that the documents prepared by defendant constitute bills of lading. Instead, plaintiff contends that absent the issuance of bills of lading the terms of the uniform bill of lading prescribed by the Interstate Commerce Commission apply.

■ We are satisfied from our review of this matter that plaintiff should have prevailed in this action in the trial court. Plaintiff's contention that the terms of the uniform bill of lading should be implied as the contract between the parties is correct. *City of Nome v. Alaska Steamship Co.,* 321 *F.Supp.* 1063, 1066 (D.Alaska 1971). Under the uniform bill of lading the only way in which a shipper may escape liability for freight charges is to execute a nonrecourse stipulation. This nonrecourse stipulation requires that the shipper stipulate by signature on the face of the bill of lading that the carrier should not make delivery without requiring payment of the freight charges. *See Pennsylvania R. Co. v. Gallagher,* 174 *Pa.Super.* 462, 101 *A.2d* 401, 402 (Super.Ct.1953); *Atlantic Coast Line R. Co. v. Clinchfield Fuel Co.,* 94 *F.Supp.* 992, 994–995 (W.D.S.C.1951). Since here there was no bill of lading there was obviously no such stipulation. The fact that plaintiff failed in its duty to issue the bill is not germane. *Ibid.* Thus, the finding by the trial judge that there was no bill of lading issued should have led him to find for plaintiff, not defendant.

■ Defendant makes several contentions in an attempt to avoid what appears to be its clear liability. In its brief it contends that it was not shown in the trial court that it was the owner, shipper or consigner of the items delivered. It further asserts that its "involvement in shipping was limited to providing a loading dock and notifying Freight Operations, Inc., when the newspaper circulars were printed and therefore could be

loaded for delivery." Defendant's contention lacks legal merit since the person from whom the goods are received is the consignor. There is no question but that defendant was this entity. See 49 *U.S.C.A.* § 122; *Pennsylvania R. R. Co. v. Adams Mercantile Co.*, 245 *Ala.* 268, 16 *So.*2d 796, 797 (Sup.Ct.1944); 13 *Am.Jur.*2d, *Carriers*, § 472 at 941; *cf. N.J.S.A.* 12A:7–102(1)(c) (definition of "consignor" under Uniform Commercial Code).

■ Defendant contends that plaintiff had actual knowledge that defendant was acting for Rand. Thus, defendant argues that as an agent for a disclosed principal it should not be liable. This defense is insufficient as a matter of law. *See Pennsylvania R. Co. v. Gallagher, supra*, 101 *A.*2d at 403–404.

Defendant urges, citing *New York, N. H. & H. R. Co. v. Nothnagle*, 346 *U.S.* 128, 73 *S.Ct.* 986, 97 *L.Ed.* 1500 (1953), that the uniform bill of lading should not apply since defendant was not presented with the uniform bill and thus had no opportunity to disclaim liability. But *Nothnagle* is distinguishable. That case held that a train passenger who was not given a claim check on which she could claim a value for her baggage would not be held to a value of $25 for lost baggage, as specified in the carrier's tariff. As explained in *Semi-Metals, Inc. v. Pinter Brothers*, 70 *N.J.* 437 (1976), *Nothnagle* simply is based on a theory that "In order to limit liability in accordance with the exception, there must be an agreement in writing between the shipper and the carrier to that effect." 70 *N.J.* at 441. The case is distinguishable because the liability of defendant here is established without written agreement. In short, here the liability that is imposed is the liability that exists in the absence of a contrary understanding expressed on the bill of lading. In *Nothnagle* it was the limitation that required the understanding. Since there was no understanding there was no limitation. Thus *Nothnagle* is consistent with the result we reach.

■ Defendant points out that the consignees of the goods may have been liable for the shipping costs. This may well be so. *See Checker Van Lines v. Siltek International, Ltd., supra,*

169 *N.J.Super.* at 105. But we fail to see how that consequence discharges defendant from its independent liability.

Finally, defendant urges that a recovery by plaintiff would be an absurd result since it was plaintiff which failed to supply the bill of lading so that defendant could specify its nonliability. It cannot be denied that the result seems harsh, particularly since an unknowledgeable shipper might not have anticipated liability in the circumstances of this case. Yet we perceive no escape from the requirements of federal law in this case. Further, we point out that defendant is after all a business enterprise which presumably could obtain legal advice with regard to its potential obligations. It could have avoided liability by refusing to ship the goods in the absence of a bill of lading permitting it to avoid liability.

The judgment of October 1, 1981 is reversed. The matter is remanded to the Superior Court, Law Division, Middlesex County, for entry of a judgment in favor of plaintiff against defendant for $4,010 plus interest from the time that plaintiff demanded payment.